UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELESTE PAULINE SAUNDERS,<br><br>    Plaintiff,<br><br>    v.<br><br>TIFFANY MARTIN and PATRICK EBELING,<br><br>    Defendants.<br>_____/ | No. C-12-2851 EMC (pr)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket No. 41)** |

## I. INTRODUCTION

On June 4, 2012, Plaintiff Angeleste Pauline Saunders filed this *pro se* civil rights action under 42 U.S.C. § 1983 against the City and County of San Francisco, the San Francisco Sheriff's Department and employees of the Sheriff's Department. In a preliminary screening under 28 U.S.C. § 1915A, the Court found that the complaint, liberally construed, stated a colorable claim for excessive force against Tiffany Martin and Patrick Ebeling arising from an incident that occurred on March 11, 2012 at the San Francisco County Jail ("SFCJ"). All other claims were dismissed.

Defendants Martin and Ebeling moved to dismiss on the grounds that Plaintiff did not exhaust administrative remedies. Docket No. 14. On July 17, 2013, the Court granted the motion, finding that Plaintiff did not present evidence of exhaustion or that remedies were unavailable to her. Docket No. 30. The Court entered judgment for Defendants. Docket No. 31.

On June 4, 2014, Plaintiff moved to re-file her complaint, arguing that, in 2012, the procedures at the SFCJ did not inform inmates how to exhaust administrative remedies and she only learned the correct procedure when she was incarcerated again at the SFCJ in November 2013. Docket No. 35. The Court construed this as a motion under Federal Rule of Civil Procedure 60(b) and granted it, citing the recent Ninth Circuit opinion in *Albino v. Baca*, 747 F.3d 1162, 1171-72 (9th Cir. 2014)(en banc), which held that administrative remedies were unavailable to a prisoner who never received information regarding the grievance procedure. The Court vacated the judgment, ordered that the case be reopened and directed Defendants to file a new dispositive motion.

On July 25, 2014, Defendants filed a motion for summary judgment, arguing that Plaintiff had not exhausted administrative remedies because she did not appeal the first level denial of her grievance and that *Albino v. Baca* was distinguishable. Plaintiff filed an opposition. For the reasons discussed below, the Court grants Defendants' motion for summary judgment.

## II. STANDARD OF REVIEW

A. Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

At the summary judgment stage, the court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

B. Exhaustion

The Prison Litigation Reform Act of 1995 amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other

2

1. Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such
2. administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in
3. prisoner cases is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

    The PLRA requires "proper exhaustion" of administrative remedies. *Id.* at 93. To meet this exacting standard, prisoners must not only lodge a formal complaint, but also pursue it through each stage of the administrative process in "compliance with an agency's deadlines and other critical procedural rules" as a precondition to bringing suit in federal court. *Id.* at 90. The requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id.* A prisoner must exhaust even when the remedy he seeks is unavailable through the grievance process. *Id.* at 85-86. A complaint must be dismissed if the prisoner did not exhaust all available administrative remedies before the suit was filed. *Booth v. Churner*, 532 U.S. 731, 738 (2001); *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002).

    Procedurally, failure to exhaust under the PLRA is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). In the Ninth Circuit, a motion for summary judgment is the proper vehicle to decide whether a prisoner has exhausted administrative remedies pursuant to the PLRA. *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014) (en banc). A defendant has the burden to prove that there was an available administrative remedy, and that the prisoner did not exhaust it. *Id.* at 1172. Once the defendant meets that burden, the burden shifts to the plaintiff to "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* In adjudicating summary judgment on the issue of exhaustion, all the facts in the record must be viewed in the light most favorable to the non-moving party. *Id.* at 1173 (citing Liberty Lobby, 477 U.S. at 247-50).

### III. DISCUSSION

A. Defendants' Evidence

    1. General Grievance Procedures

Defendants submit evidence that, in March 2012, the time at issue, the San Francisco's Sheriff's Department followed a procedure to inform inmates of the written grievance process. Declaration of Sheriff's Captain Takafumi Ideta ("Ideta Decl.") ¶ 4, Ex. A; Declaration of Sheriff

3

1 Lieutenant Robert De Biasio ("De Biasio Decl.") ¶ 4. Each new prisoner in the general population 2 was given an orientation booklet and an orientation class, both of which outlined the services and 3 programs in the jail, including the grievance procedure. De Biasio Decl. ¶ 4. The formal grievance 4 procedure is as follows: The procedure is initiated by a prisoner submitting a completed grievance 5 form. Ideta Decl., Ex. A at 3. Grievances against Sheriff's Department employees go directly to the 6 Facility Commander who logs the grievance and has seven days to respond. *Id.* at 6. If the prisoner 7 is not satisfied with the Facility Commander's response, the prisoner can appeal to the Custody 8 Division Commander, who also has seven days to respond. *Id.* A decision by the Custody Division 9 Commander completes the appeals process and is final. *Id.* at 5. The Custody Division 10 Commander's decision will be sent to the prisoner and to the Facility Commander and will indicate 11 that the prisoner has exhausted his or her administrative remedies. *Id.*

12 In addition to the orientation booklet and class, each prisoner in County Jail #2, where 13 Plaintiff was housed, had full access to the attorneys staffing the Prisoner Legal Services office 14 ("PLS"), which was open from 7 a.m to 3 p.m. De Biasio Decl. ¶ 5. The attorneys who staff PLS 15 are knowledgeable about grievance procedures and are available to prisoners for general 16 consultations or individual meetings. *Id.* Grievance forms are available from deputies, the PLS 17 office or medical staff. *Id.* ¶ 7.

18   2.   Plaintiff's Grievance

19 Plaintiff filed a grievance against Defendants Martin and Ebeling for using excessive force 20 against her on March 11, 2012. Lt. De Biasio investigated this grievance and, at a meeting with 21 Plaintiff, told her that he had concluded that Defendants had used only the amount of force required 22 to regain her compliance. *Id.* ¶ 8, Ex. B. Plaintiff did not like this response and refused to sign the 23 grievance form. *Id.* Lt. DeBiasio wrote his denial of the excessive force grievance with an 24 addendum stating, "I gave Saunders a copy of this memo and asked if she was satisfied with the 25 response. She was not satisfied and refused to sign acknowledgment of receiving a response. Dep. 26 Countee # 1883 was the Pod deputy and witnessed the inmate's refusal to sign." *Id.*

27 At the time of the March 2012 incident, Capt. Ideta was the Facility Commander for County 28 Jail #2. Ideta Decl. ¶ 7. As Facility Commander, Capt. Ideta responded to Plaintiff's grievance as

4

1  follows: "Inmate Saunders' refusal to acknowledge and sign her grievance clearly demonstrates her
2  refusal to follow the grievance process. Therefore, her grievance is now concluded." *Id.*, Ex. B. A
3  search of the appropriate files by Luigi Cauteruccio, Sheriff's Department Custodian of Records,
4  revealed that Plaintiff did not appeal the denial of her grievance to the Custody Division
5  Commander. Declaration by Luigi Cauteruccio ¶¶ 4, 5.

B.  <u>Plaintiff's Evidence</u>

In Plaintiff's opposition,[1] she describes the following: On January 25, 2012, she was arrested. Opp. at 3. When she arrived at the jail, she was not processed according to regular procedures, but was transported to the Psych Emergency Services Ward at San Francisco General Hospital, where she spent the night and was allowed to go home the next day. *Id.* However, she was rearrested the following day and placed in a safety cell in C-Pod, which is the psych/medical unit of the San Francisco Sheriff's Department. *Id.* The next day, she was placed in the general population in C-Pod, not in the general population in the jail. *Id.* at 4. She was never given the orientation class or orientation booklet described by Defendants because she was not placed in the "incoming processing pod." *Id.*

Plaintiff states that, at the time of the March 11, 2012[2] incident, she not aware that she could get help from the lawyers in PLS, but that PLS staff assisted her in filing her grievance after the incident occurred. Opp. at 6; Docket No. 35 at 3. Plaintiff's grievance complained, in part, that the rules violation hearing[3] was held by Defendant Ebeling who had already decided Plaintiff was guilty. Ideta Decl., Ex. B. Lt. De Biasio, who held the hearing on Plaintiff's grievance, affirmed this part of her grievance, responding that, in the future, non-involved supervisors would adjudicate

---

[1] At the end of the opposition, Plaintiff writes: "This opposition is the truth to everything I have said in this answer to not dismiss this case." Although not sworn under penalty of perjury, the Court accepts the facts in the opposition based on Plaintiff's personal knowledge as admissible evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (a verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence).

[2] Plaintiff's opposition indicates March 11, 2011. She likely means March 11, 2012, because that is the date of the excessive force incident.

[3] Although not briefed by the parties, it appears that Plaintiff was charged with a rules violation as a result of the March 11, 2012 incident.

5

rules violations hearings. *Id.* Plaintiff agreed with this part of Lt. De Biasio's response. Opp. at 8. However, Plaintiff states that she did not sign the grievance form when Lt. De Biasio requested her to sign it because she disagreed with the second portion of his response that "there was not excessive force used" and because he refused to give her the yellow page of the grievance form so that she could check the appeal box. Opp. at 10. Plaintiff states that she filed many grievances after the March 11, 2012 grievance and Lt. De Biasio continued to interfere with the grievance and resolution process. *Id.* at 13.

C.  Analysis

The undisputed evidence establishes that Plaintiff was aware of the grievance procedure having filed a grievance; however, she did not exhaust the grievance procedure because she did not sign the grievance form in the appropriate box or check the box indicating that she wanted to appeal Lt. Di Biasio's denial of her grievance. As indicated previously, to exhaust a grievance, the inmate must appeal it to the level of the Custody Division Commander. Defendants satisfied their burden of showing that there was an available administrative remedy and that Plaintiff did not exhaust it. Plaintiff now must produce evidence showing that something in her case made the existing and generally available administrative remedies unavailable to her. *See Albino*, 747 F.3d at 1172.

Plaintiff presents the following two arguments to support her claim that the available administrative remedies were unavailable to her: (1) she did not receive the general inmate orientation about the grievance procedure and, thus, did not know how to file a grievance or how to exhaust it; and (2) Lt. De Biasio's behavior at her appeal review hearing prevented her from appealing to the final level of review.

On this motion for summary judgment, Plaintiff's evidence that she did not receive the general inmate orientation to the grievance procedure is taken as true. However, even if true, this evidence does not support her claim that the lack of an orientation prevented her from filing a grievance or from exhausting it. The fact that Plaintiff did, in fact, file a grievance shows that she knew about grievances and how to file them. Plaintiff acknowledges that, after the March 11, 2012 incident, she had access to the attorneys at PLS and they filed the excessive force grievance on her behalf. Opp. at 6; Docket no. 35, Motion to Refile at 3. Given the PLS attorneys' involvement with

Plaintiff, even if she did not know specifically the requirements for exhaustion, she could have requested PLS's advice at any time. Additionally, Plaintiff admits that, immediately after she filed the excessive force grievance, she regularly filed grievances and knew how to comply with the exhaustion requirements. Opp. at 11-13, 15 and attached exhibits. Although this second fact, by itself, may be insufficient to show that Plaintiff knew about the grievance procedure at the time of the excessive force incident, it is probative evidence that she had enough information at the time to file and exhaust her grievance.

The crux of Plaintiff's argument is not that she was unfamiliar with the grievance process or how to exhaust her grievance, but that Lt. De Biasio prevented her from doing so. First, Plaintiff argues that she could not exhaust her grievance because Lt. De Biasio refused to give her the yellow page of her grievance to sign because he did not want the appeal to be forwarded to a supervisor other than himself. Opp. at 10. Plaintiff provides no evidence to support her speculation that Lt. De Biasio wanted to keep her appeal for himself and it is contradicted by the grievance form itself which indicates that, if Plaintiff appealed, the appeal would be reviewed by the Facility Commander, not by Lt. De Biasio. This speculation is also contradicted by Plaintiff's own statement that she refused to sign because she was dissatisfied with Lt. De Biasio's response. *Id.* Plaintiff also fails to explain why she needed the yellow page of her grievance, especially in light of the fact that the grievance form indicates that Plaintiff was to take the pink page for her records and that she would receive the yellow page with the response to her grievance. *Id.*, Exhibits (Copies of Plaintiff's Grievances, each one stating, "Note: After you have finished and signed this form, take your PINK copy for your records," and providing a box for the inmate's signature and another box for indicating if the inmate wanted to appeal the decision).

Plaintiff also attempts to support her claim that Lt. De Biasio wanted to interfere with her appeal with evidence that he reviewed many of her later appeals, even when she addressed them to other staff members for their review. Opp. at 13. However, this provides little support for her argument because she does not submit evidence showing how Lt. De Biasio prevented her from exhausting her later appeals. Defendants respond that, as SFCJ's Lieutenant, Lt. De Biasio would

have been acting Facility Commander when Captain Ideta was absent and, thus, was responsible for reviewing grievances. Defendants' response is reasonable and Plaintiff fails to dispute it.

After reviewing the evidence and viewing it in Plaintiff's favor, as must be done on a summary judgment motion, the Court concludes that Plaintiff has failed to meet her burden of producing evidence showing that there is something in her particular case that made the existing and generally available administrative remedies effectively unavailable to her.

*Albino v. Baca* is distinguishable from this case. In *Albino*, the plaintiff's evidence showed that, in addition to receiving no information about the grievance process, he never saw a complaint form and he repeatedly sought help with the grievance process from prison officers, who denied him assistance or information and told him he must ask his defense attorney for help. *Albino*, 747 F.3d. at 1175-76. Unlike the plaintiff in *Albino*, Plaintiff filed a grievance with the assistance of the PLS office, PLS staff were available to give her advice and instructions, SFCJ staff did not attempt to dissuade or prevent her from filing her grievance, her grievance was investigated, reviewed and responded to by Lt. De Biasio and the grievance form itself notified her that she must sign it and indicate whether she wished to appeal Lt. De Biasio's response.

Because Plaintiff fails to come forward with evidence showing that there is something in her case that made the existing and generally available administrative remedies unavailable to her, Defendants' motion for summary judgment based on lack of exhaustion is granted.

## IV.     CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgment for failure to exhaust administrative remedies is granted.

The Clerk of the Court shall terminate all pending motions, enter judgment and close the file.

IT IS SO ORDERED.

Dated: January 26, 2015

EDWARD M. CHEN
United States District Judge

8